NOTICE

*The text of this opinion can be corrected before the opinion is published in the* Pacific Reporter. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| STATE OF ALASKA,<br><br>               Appellant,<br><br>      v.<br><br>JAMES R. SEIGLE,<br><br>               Appellee. | Court of Appeals No. A-11473<br>Trial Court No. 3AN-10-4009 CR<br><br>O P I N I O N<br><br>No. 2545 — March 17, 2017<br>as corrected on April 5, 2017 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland, Judge, and the Statewide Three-Judge Panel, Eric Smith, John Suddock, and Trevor N. Stephens, Judges.

Appearances: Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellant; Shelley K. Chaffin, Law Office of Shelley K. Chaffin, Anchorage, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge ALLARD.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

James R. Seigle was convicted of first-degree sexual assault[1] for coercing his girlfriend to engage in oral sex. We affirmed Seigle's conviction in a previous decision.[2] The present appeal deals with Seigle's sentence.

As a first felony offender, Seigle faced a presumptive term of 20 to 30 years for this crime.[3] At sentencing, Superior Court Judge Philip Volland found two bases for referring Seigle's case to the statewide three-judge sentencing panel. First, Judge Volland concluded that Seigle had proved the non-statutory mitigating factor of extraordinary potential for rehabilitation. Second, Judge Volland concluded that it would be manifestly unjust to impose a sentence within the applicable presumptive range in Seigle's case.

At the time of sentencing, Seigle was fifty-four years old and employed. He had a single prior criminal conviction — a misdemeanor conviction in California from more than ten years ago for "false personation." In his sentencing remarks, Judge Volland (who had also been the trial judge) expressed his confidence that the events recounted at Seigle's trial were "one-time events, most likely never to be repeated," and that the sentencing goal of rehabilitation was already satisfied, in the sense that Seigle's criminal behavior would not happen again.[4]

Judge Volland concluded that Seigle was the type of defendant that "the non-statutory mitigator [of extraordinary potential for rehabilitation] is intended to recognize." The judge further found that manifest injustice would result if Seigle received a sentence within the presumptive range of 20 to 30 years. The judge expressed

---

[1]   AS 11.41.410.

[2]   *Seigle v. State*, 2016 WL 5172623 (Alaska App. June 22, 2016) (unpublished).

[3]   *See* AS 12.55.125(i)(1)(A)(ii).

[4]   *See, e.g.*, *Kirby v. State*, 748 P.2d 757, 766 (Alaska App. 1987) ("Rehabilitation potential is [] the converse of dangerousness.").

his opinion that "a 10-year sentence [would be] enough," given the facts of this case and given Seigle's history and individual characteristics. However, Judge Volland did not have the authority to impose such a sentence, so he referred Seigle's case to the three-judge sentencing panel, which does have that authority.[5]

At the conclusion of the sentencing proceedings before the three-judge panel, the panel rejected Seigle's proposed non-statutory mitigating factor of extraordinary potential for rehabilitation. But the panel agreed with Judge Volland that it would be manifestly unjust to sentence Seigle to a term of imprisonment within the 20- to 30-year presumptive range. The panel ultimately sentenced Seigle to 20 years with 5 years suspended (15 years to serve) — a sentence that the panel independently found was "appropriate under the *Chaney* criteria."[6]

In reaching its sentencing decision, the three-judge panel relied in part on this Court's decision in *Collins v. State*.[7] Because of the three-judge panel's reliance on *Collins*, the State now challenges Seigle's sentence as illegal.[8]

As we explain more fully in this opinion, the State contends that our decision in *Collins* was "never the law in Alaska" — and that, because the three-judge panel relied on *Collins* when it sentenced Seigle, Seigle's sentence is so fundamentally flawed that the double jeopardy clause of the Alaska Constitution does not protect it from reversal on appeal.

---

[5]    *See* AS 12.55.165 & AS 12.55.175.

[6]    *See Chaney v. State*, 477 P.2d 441, 444 (Alaska 1970); AS 12.55.005 (codifying the *Chaney* criteria).

[7]    287 P.3d 791 (Alaska App. 2012).

[8]    We note that Seigle was also convicted of fourth-degree assault for conduct related to the same incident. The three-judge panel imposed 30 days for that crime. Seigle did not appeal that conviction in his direct appeal and the State did not cross-appeal that sentence.

For the reasons explained in this opinion, we reject the State's arguments and we affirm Seigle's sentence.

*Our decision in Collins v. State*

To explain the State's claim that our decision in *Collins* was "never the law in Alaska," we must first describe the substance and the procedural history of that decision.

In 2006, the Alaska Legislature greatly increased the penalty ranges for all sexual felonies — based in part on the presumptions that a person convicted of a sex offense typically had a history of other undisclosed sex offenses and that a person convicted of a sex offense typically had unusually poor prospects for rehabilitation.[9] In *Collins*, this Court concluded (by a two-to-one vote) that, because these legislative presumptions might not be true in a particular defendant's case, a defendant convicted of a sex offense should be given the opportunity to show (by clear and convincing evidence) that he or she had no history of prior sex offenses, or that he or she had normal prospects for rehabilitation.[10] If a defendant could make these showings, this might entitle the defendant to have his or her case referred to the statewide three-judge sentencing panel — the judicial body authorized to impose sentences outside the normal constraints of presumptive sentencing.[11]

Judge Bolger dissented from the decision in *Collins*. In his dissent, Judge Bolger argued that it was illogical to conclude that manifest injustice exists when a felony sex offender with moderate prospects for rehabilitation is sentenced to a term of

---

[9]   *Collins*, 287 P.3d at 795-97.

[10]   *Id.*

[11]   *Id.*

imprisonment within the established presumptive ranges because "the legislature recognized that sex offenses can have a serious impact on the victim and society."[12] Judge Bolger reasoned that a sex offender with moderate prospects for rehabilitation "may still pose an unacceptable danger to the community," and that defendants should therefore be required to show the same "particularly favorable" prospects for rehabilitation as other offenders in order to establish a non-statutory mitigating factor justifying referral to the three-judge sentencing panel.[13]

The *Collins* decision was issued on November 2, 2012. The three-judge panel held its hearing in Seigle's case two weeks later.

By that time, the State had already filed a petition for hearing in the Alaska Supreme Court, asking that court to review this Court's decision in *Collins*.

On February 12, 2013, about two months after the three-judge panel sentenced Seigle, the supreme court granted the State's petition and agreed to review *Collins*.[14] However, one year later, after the legislature amended the three-judge panel sentencing statutes in response to *Collins*, the supreme court dismissed the State's petition as improvidently granted.[15]

*The legislature's response to* <u>Collins</u>

In the spring of 2013, while the State's petition for hearing was still pending before the supreme court, the Alaska Legislature responded to our decision in *Collins* by enacting session law SLA 2013, Chapter 43. In section 1(b) of this session

---

[12]   *Id.* at 798-99 (Bolger, J., dissenting).

[13]   *Id.* at 799 (Bolger, J., dissenting).

[14]   *See* Supreme Court File No. S-14966 (Feb. 12, 2013).

[15]   *See* Supreme Court File No. S-14966 (Feb. 25, 2014).

law, the legislature declared that it had never intended to create new grounds for referring a felony sex offender's case to the three-judge panel:

> (b) The legislature finds that:
>
>> (1) in 2006, the legislature did not intend, by [enacting increased penalties for sexual felonies], and the legislature does not now intend[,] to create new or additional means for a defendant convicted of a sexual felony and sentenced under AS 12.55.125(i) to obtain referral to a three-judge panel;
>>
>> (2) the legislature did not, in 2006, intend nor does the legislature now intend for a court to create new or additional means for a defendant convicted of a sexual felony and sentenced under AS 12.55.125(i) to obtain referral to a three-judge panel.[16]

In section 1(c) of this session law, the legislature further declared that it intended to overturn the majority decision in *Collins* and to endorse the position expressed in Judge Bolger's dissenting opinion:

> (c) It is the intent of the legislature in AS 12.55.165, as amended by sec. 22 of this Act, and AS 12.55.175, as amended by sec. 23 of this Act, to overturn the majority decision in *Collins v. State*, 287 P.3d 791 (Alaska App. 2012), and to endorse the dissenting opinion in the same case.[17]

To effect this legislative intent, the legislature amended AS 12.55.165 (the statute governing referrals to the three-judge panel) by adding subsection (c) that restricts a sentencing judge's authority to refer a case to the panel:

---

[16]   Ch. 43, § 1, SLA 2013.

[17]   *Id.*

(c) A court may not refer a case to [the] three-judge panel ... if the defendant is being sentenced for a sexual felony under AS 12.55.125(i) and the request for the referral is based solely on the claim that the defendant, either singly or in combination, has

(1) prospects for rehabilitation that are less than extraordinary; or

(2) a history free of unprosecuted, undocumented, or undetected sexual offenses.

At the same time, the legislature enacted a corresponding amendment to AS 12.55.175 (the statute defining the authority of the three-judge panel) by adding subsection (f). This new subsection states in pertinent part:

(f) A defendant being sentenced for a sexual felony under AS 12.55.125(i) may not establish, nor may the three-judge panel find under (b) of this section or any other provision of law, that manifest injustice would result from imposition of a sentence within the presumptive range based solely on the claim that the defendant, either singly or in combination, has

(1) prospects for rehabilitation that are less than extraordinary; or

(2) a history free of unprosecuted, undocumented, or undetected sexual offenses.

These new laws went into effect on July 1, 2013, more than seven months after Seigle was sentenced in this case. The following February, the Alaska Supreme Court dismissed the State's petition for hearing in *Collins* as improvidently granted.[18]

*The State's argument that Collins was never the law in Alaska*

As we explained earlier in this opinion, the State takes the position that Seigle's sentence is illegal because, when the three-judge panel sentenced Seigle, the

---

[18]   *See* Supreme Court File No. S-14966 (Feb. 25, 2014).

panel relied in part on this Court's decision in *Collins* and, according to the State, our decision in *Collins* was never the law in Alaska.

The State's argument that *Collins* was never the law in Alaska hinges on its contention that this Court's published decisions have no precedential value until this Court's judgment "takes effect" under Alaska Appellate Rules 507(b) and 512(a) — that is, until any petition for hearing to the Alaska Supreme Court is resolved and jurisdiction returns to the trial court.

Appellate Rule 507(b) declares that, unless this Court orders otherwise, a judgment issued by this Court "takes effect and full jurisdiction returns to the trial court on the day specified in Rule 512(a) for return of the record [to the trial court]." Appellate Rule 512(a) defines when the record on appeal is returned to the trial court at the conclusion of an appeal. Subsection (a)(2) of this rule states that, in Court of Appeals cases where a party petitions the supreme court to review our decision, the record on appeal shall be returned to the trial court on the day after the petition for hearing is denied or, if the petition is granted, on the day after the time expires for seeking rehearing of the supreme court's decision on the merits.

The State argues that, under Rules 507(b) and 512(a), this Court's decision in *Collins* never took effect. Here is the State's reasoning:

When this Court issued *Collins*, the Court did not exercise our authority under Rule 507(b) to declare that our decision in *Collins* would take effect on some date *other* than the date established by Rules 507(b) and 512(a). Thus, our judgment in *Collins* took effect on the date established in Rule 512(a) for return of the record to the trial court. Moreover, because the State filed a petition for hearing in *Collins*, and because the supreme court initially granted that petition, the time for returning the record to the trial court did not arrive until February 26, 2014 — the day after the supreme court dismissed the State's petition as improvidently granted. And by that time (indeed,

months before that time), the Alaska Legislature had enacted SLA 2013, chapter 43, which amended AS 12.55.165 and AS 12.55.175 in response to *Collins*.

Thus, the State concludes, our judgment in *Collins* never took effect because the effect of our judgment was stayed until late February 2014 and because the legislature amended the pertinent sentencing statutes effective July 1, 2013.

### *Why we reject the State's argument*

To explain why we reject the State's argument, we must explain the difference between an appellate court's "judgment" in a particular case (what used to be called its "mandate" to the lower court) and an appellate court's "opinion" — that is, the court's decision as a generally applicable statement about the law.[19]

Alaska law formerly required an appellate court to issue a "mandate" at the conclusion of any appellate proceeding.[20] This "mandate" performed two functions: it contained the appellate court's directions to the lower court and it was the order that formally returned jurisdiction over the case to the lower court.[21]

---

[19] *See Malutin v. State*, 198 P.3d 1177, 1182 (Alaska App. 2009) (explaining, in the context of the former version of Appellate Rule 507, that "the appellate court's *opinion* was its statement of the law, while the appellate court's *mandate* was its order returning jurisdiction over the case to the lower court, and directing the lower court to perform whatever actions were necessary or proper to carry out the appellate court's decision in that particular case") (emphasis in original).

[20] *Id.* at 1181.

[21] *See id.* ("[T]he mandate is the appellate court's order to the lower court, directing the lower court to take whatever further action is necessary and/or appropriate in light of the appellate court's decision. The 'spreading' of the mandate is the act that formally returns jurisdiction over the case to the lower court.") (citing 16A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3987, at 735–36 (3d ed. 1999)).

In 1983, the Alaska Appellate Rules were revised, and the requirement of a mandate was eliminated. Appellate Rule 507(a) was revised to make it clear that "[t]he opinion of the appellate court ... shall constitute its judgment, and shall contain its directions to the trial court, if any. No mandate shall be issued."

At the same time, Appellate Rules 507(b) and 512(a) were amended to their current form, to clarify when the court's judgment (*i.e.*, its directions to the lower court in that particular case) became effective. Thus, when Rule 507(b) speaks of the date on which an appellate court's judgment "takes effect," it is referring to the date on which the court's decision takes effect *in the particular case being appealed.* Rule 507(b) does not govern when an appellate court's decision becomes precedent as a matter of law — that is, it does not govern when the appellate court's statements about the law become binding on lower courts (and on the appellate court itself, under the doctrine of *stare decisis*).

To answer the question of when an opinion of this Court becomes legal precedent for purposes of the lower courts (and for this Court), one must consult the statutes creating the Court of Appeals and defining its jurisdiction. Alaska Statute 22.07.020(g) expressly declares that the decisions of this Court are binding precedent until such time as they are affirmatively superseded by a decision of the Alaska Supreme Court:

> A final decision of the court of appeals is binding on the superior court and on the district court unless superseded by a decision of the supreme court.[22]

---

[22] *See also* AS 22.07.030 ("In this section, 'final decision' means a decision or order, other than a dismissal by consent of all parties, that closes a matter in the court of appeals."); Alaska R. App. P. 302(a) ("'Final decision' includes any decision or order of the court of appeals, other than a dismissal by consent of all parties, which closes a matter in the court of appeals, whether or not it contemplates further proceedings in a trial court.").

Thus, pursuant to this statute, if this Court formally publishes our decision in a case, the statements of law in that case are precedent, binding on the trial courts, unless and until those statements of law are superseded by a decision of the Alaska Supreme Court.

Alaska Statute 22.07.020(g) codifies the principle of vertical *stare decisis*, under which lower courts are required to follow the precedent of higher courts.[23] The statute is also in accord with the rule followed in most other jurisdictions — the rule that statements of law in a published decision of an intermediate appellate court must be followed unless and until they are overruled by a higher court.[24]

---

[23]  *See Auto Equity Sales, Inc. v. Super. Ct. of Santa Clara Cty.*, 369 P.2d 937, 939-40 (Cal. 1962) ("Under the doctrine of stare decisis, all tribunals exercising inferior jurisdiction are required to follow decisions of courts exercising superior jurisdiction. Otherwise, the doctrine of stare decisis makes no sense. ... It would create chaos in our legal system if these courts were not bound by higher court decisions.").

[24]  *See, e.g.*, *Stanfill v. State*, 384 So. 2d 141, 143 (Fla. 1980) ("[T]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court."); *State Farm Fire & Casualty Co. v. Yapejian*, 605 N.E.2d 539, 540 (Ill. 1992) ("A decision of the appellate court, though not binding on other appellate districts, is binding on the [trial] courts throughout the State."); *Placido v. Citizens Bank & Trust Co.*, 379 A.2d 773, 779 (Md. App. 1977) ("Trial courts are bound by the decisions of the Court of Appeals, until they may be overruled. Until then they are precedents to be followed and obeyed."); *Tebo v. Havlik*, 343 N.W.2d 181, 185 (Mich. 1984) ("A decision by any panel of the Court of Appeals is, therefore, controlling statewide until contradicted by another panel of the Court of Appeals or reversed or overruled by this Court. While the possibility of reversal or contradiction may lessen a claim of reliance, it does not preclude it.") (internal citations omitted); *State v. M.L.A.*, 785 N.W.2d 763, 767 (Minn. App. 2010) (stating that the court of appeals and district courts are "bound by supreme court precedent and the published opinions of the court of appeals"); *State v. Nichols*, 600 N.W.2d 484, 487 (Neb. App. 1999) (criticizing lower court for failing to abide by court of appeals decision and noting that Nebraska law requires trial judges to follow the published opinions of the intermediate court of appeals "until they are modified or overruled by the Supreme Court"); *see also* Cal. Ct. R. 8.1115(d) (published opinion may be cited or relied on as soon as it is certified for

(continued...)

The Alaska cases cited by the State in its cross-appeal do not dictate a contrary result. All of those cases involve the question of when the *judgment* — *i.e.*, the mandate — of this Court takes effect for purposes of determining an individual defendant's rights or obligations. Those cases do not address the issue of when a published decision becomes precedential law, binding on the lower courts.[25]

Moreover, the State's interpretation of Rule 507(b) — *i.e.*, its contention that Rule 507(b) governs the date on which an appellate court's decision becomes precedent — is undercut by the very wording of the rule. Rule 507(b) begins with the clause "[u]nless the [appellate court's] opinion or order expressly states otherwise." This clause authorizes an appellate court to specify a *different* date on which its judgment takes effect in that particular case. Giving an intermediate appellate court this authority

---

[24] (...continued)
publication or ordered published); Mich. Ct. R. 7.215(C)(2) ("A published opinion of the Court of Appeals has precedential effect under the rule of stare decisis. The filing of an application for leave to appeal to the Supreme Court or a Supreme Court order granting leave to appeal does not diminish the precedential effect of a published opinion of the Court of Appeals."). *See generally* 21 C.J.S. Courts § 202 ("[T]he decision of an intermediate appellate court is the law of the jurisdiction until it is reversed or overruled by the court of last resort") (citing cases). *But see* Kan. Sup. Ct. R. 8.03(j) (stating that, pursuant to Kansas court rules, a decision by a Kansas intermediate court is not binding on parties or the district courts "pending the determination of the Supreme Court on the petition for review or during the time in which to file a petition for review," although the decision can be cited for its persuasive value).

[25] *See, e.g.*, *Alex v. State*, 210 P.3d 1225, 1227 (Alaska App. 2009) (determining when judgment of Court of Appeals became final for purposes of deadline for filing post-conviction relief application); *Murray v. State*, 1990 WL 10509487, at *2 (Alaska App. Nov. 21, 1990) (unpublished) (determining date that Court of Appeals judgment takes effect for purposes of Criminal Rule 45 speedy trial calculation); *Nitz v. State*, 745 P.2d 1379, 1380-81 (Alaska App. 1987) (determining when judgment of Court of Appeals became final for purposes of Criminal Rule 45 speedy trial calculation); *see also Singletary v. State*, 583 P.2d 847, 849 (Alaska 1978) (calculating time when defendant could file, and trial court could consider, a motion to reduce sentence as the date jurisdiction returned to superior court).

only makes sense if, by using the term "judgment," Rule 507(b) is referring solely to the appellate court's mandate — that is, its directions to the lower court.

We therefore reject the State's contention that a published opinion of this Court has no precedential value while a petition for hearing is pending before the Alaska Supreme Court.

Certainly, trial judges are free to express their reservations about one of our decisions. And when the supreme court has granted a petition for hearing (thus declaring that it is actively debating the merits of this Court's decision), trial court judges may choose to stay proceedings in front of them until the petition for hearing is resolved and the long-term precedential effect of this Court's decision is clarified. But lower courts are not free to simply ignore the precedent established by this Court, even when a petition for hearing is pending. Our published decisions are precedent unless and until the supreme court affirmatively overrules or vacates them.

Returning to Seigle's case, the supreme court never overruled this Court's decision in *Collins*, so it was binding precedent on the lower courts until the legislature amended the sentencing statutes, effective July 1, 2013. Thus, when the three-judge panel sentenced Seigle in November 2012, *Collins* was good law and it was not error for the panel to rely on *Collins*.

*The State's argument that the three-judge panel misapplied Collins*

The State also claims that, even if *Collins* was controlling precedent at the time of the three-judge sentencing panel's decision, the panel nevertheless misapplied *Collins*. But the State's argument is based both on a misunderstanding of our decision in *Collins* and on a misunderstanding of how sentencing courts should address the question of manifest injustice in the context of an individual presumptive sentencing case.

As we have already explained, *Collins* recognized two non-statutory mitigating factors that might apply to defendants being sentenced for sexual felonies.[26] Under *Collins*, a defendant being sentenced for a sexual felony could seek referral to the three-judge panel if the defendant could show by clear and convincing evidence that either (1) he or she lacked a documented history of prior sex offenses, or (2) he or she had "normal" prospects for rehabilitation.[27]

But *Collins* did not alter the analysis that a sentencing judge is required to conduct when a defendant seeks referral to the three-judge panel on the ground that a sentence within the presumptive range would be manifestly unjust. When a defendant asserts that a sentence within the applicable presumptive range would result in manifest injustice, the sentencing judge is required to employ the *Chaney* criteria to assess the *totality* of the circumstances of the defendant's case, and to then determine whether all sentences within the applicable presumptive range (as adjusted for any statutory aggravators and mitigators that the court has found) would be "obviously unfair."[28] The terms "obviously unfair" and "shocks the conscience" are used interchangeably in our case law to describe a finding of manifest injustice.[29]

---

[26]  *Collins v. State*, 287 P.3d 791, 795-97 (Alaska App. 2012).

[27]  *Id.*

[28]  *See Duncan v. State*, 782 P.2d 301, 304 (Alaska App. 1989).

[29]  *See, e.g.*, *Moore v. State*, 262 P.3d 217, 221 (Alaska App. 2011); *Dancer v. State*, 715 P.2d 1174, 1177 (Alaska App. 1986); *Lloyd v. State*, 672 P.2d 152, 154 (Alaska App. 1983) ("If a judge believed imposition of a presumptive sentence would be obviously unfair, we think it highly likely that he would also find that such a sentence would shock his conscience. Conversely, a judge whose conscience was shocked by the prospect of imposing a presumptive sentence could be expected to find that the sentence would obviously be unfair.").

Because the sentencing court is required to base its conclusion regarding manifest injustice on the totality of the circumstances (*i.e.*, the facts of the current criminal episode, plus the history and underlying circumstances of the offender), the sentencing court's assessment will often include circumstances that, standing alone, would be insufficient to warrant a departure from the applicable presumptive sentencing range. For example, a sentencing judge might reject a defendant's assertion of "extraordinary potential for rehabilitation," but if the defendant has favorable prospects for rehabilitation, the judge would still consider those favorable prospects as part of the totality of the circumstances when determining whether a sentence within the presumptive range would be manifestly unjust under the *Chaney* criteria. Similarly, there may be situations where a sentencing judge is legislatively precluded (because of the existence of certain aggravating factors) from sending the defendant's case to the three-judge sentencing panel on the basis of extraordinary potential for rehabilitation. Nevertheless, if the defendant asserts that any sentence within the applicable presumptive range would be manifestly unjust as applied to him, the sentencing judge would still be required to consider the defendant's potential for rehabilitation as part of the totality of the circumstances under the *Chaney* criteria in deciding whether "manifest injustice" would result from a sentence within the presumptive range in that case.

We addressed and clarified this very issue in *Duncan v. State*.[30] In *Duncan*, this Court was called upon to explain the implications of our earlier decision in *Totemoff v. State*.[31]

The defendant in *Totemoff* was convicted of first-degree sexual assault, and he was subject to a 15-year presumptive term of imprisonment because of a prior

---

[30]   782 P.2d 301 (Alaska App. 1989).

[31]   739 P.2d 769 (Alaska App. 1987).

burglary conviction.[32] Totemoff's sentencing judge concluded that Totemoff's prior burglary was "fairly minor ... as felonies go," and that the de minimis nature of this prior offense constituted a non-statutory mitigating factor.[33] The judge therefore sent Totemoff's case to the three-judge panel based on this factor, but the three-judge panel declined to adjust Totemoff's sentence, leading to an appeal.[34]

In Totemoff's appeal, we held that it was improper for the sentencing judge to adopt a non-statutory mitigating factor (and to send Totemoff's case to the three-judge panel based on that factor) when the legislature had expressly rejected that same factor for inclusion among the mitigating factors codified in AS 12.55.155(d).[35] We noted that the legislature had originally created a statutory mitigator for defendants whose prior felonies were of lesser seriousness, but the legislature had later repealed this mitigator because it could be viewed as rewarding defendants who progressed to more serious crime over time.[36] And we held that, after the legislature has expressly rejected a particular circumstance for inclusion as a statutory mitigating factor, a sentencing court can no longer treat this same circumstance as a non-statutory mitigator.[37]

The facts of *Duncan* were similar to the situation presented in *Totemoff*. Duncan's prior felony was a de minimis offense (forging checks in the amounts of $12

---

[32] *Id.* at 770.

[33] *Id.* at 773.

[34] *Id.* at 773-74.

[35] *Id.* at 776-77.

[36] *Id.* at 776.

[37] *Id.*

and $7) and he committed this felony when he was eighteen years old.[38]  Based on this, as well as the other circumstances of the case, Duncan's sentencing judge concluded that the prescribed presumptive term for Duncan's current offense would be manifestly unjust, so the judge referred Duncan's case to the three-judge panel.[39]

But when Duncan's case was presented to the three-judge panel, the members of the panel concluded that they had no jurisdiction to sentence Duncan.[40]  The panel interpreted *Totemoff* as absolutely prohibiting them from considering the mitigated nature of Duncan's prior offense in any fashion — either as an independent non-statutory mitigating factor, or even as one of the several circumstances that could be considered when deciding whether the prescribed presumptive term was manifestly unjust in Duncan's case.[41]  The panel's ruling on this issue led to an appeal.[42]

In our decision in *Duncan*, we explained that the three-judge panel's interpretation of *Totemoff* was incorrect.[43]  *Totemoff* held that the mitigated nature of a prior felony was not a non-statutory mitigator that, *standing alone*, could justify a departure from the prescribed presumptive term.[44]  But the mitigated nature of a prior offense nevertheless remained a circumstance that could be considered, in conjunction

---

[38]  *Duncan*, 782 P.2d at 301.

[39]  *Id.*

[40]  *Id.* at 302.

[41]  *Id.*

[42]  *Id.* at 303.

[43]  *Id.* at 304.

[44]  *Id.*

with the other circumstances of the defendant's case, when the three-judge panel decided whether the presumptive term was manifestly unjust as applied to the defendant.[45]

As we explained in *Duncan*, when a sentencing court decides whether a sentence within the prescribed presumptive range would be manifestly unjust in a particular defendant's case, the sentencing court must consider the totality of the circumstances surrounding the case — including the defendant's background, education, character, and prior criminal history, as well as the seriousness of the current offense — in light of the sentencing goals of rehabilitation, deterrence, isolation, and affirmation of community norms.[46] Thus, "[t]he nature and seriousness of an offender's prior criminal misconduct are a legitimate part of the totality of the circumstances [to be] considered in the overall determination of manifest injustice."[47]

We cautioned that "neither an individual sentencing judge nor the three-judge panel would be justified in basing a finding of manifest injustice entirely or primarily on the mitigated nature of a prior felony conviction" — because such a finding "would elevate the mitigated nature of the prior offense to the level of a non-statutory mitigating factor, thereby subverting the intent of the legislature."[48] But this rule does not foreclose a sentencing judge, or the three-judge panel, from considering the mitigated

---

[45] *Id.*

[46] *Id.*; *see State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970); AS 12.55.005 (codifying *Chaney* sentencing criteria); *see also* Alaska Const. Art. I, § 12 (describing the goals of criminal administration as "the need for protecting the public, community condemnation of the offender, the rights of victims of crimes, restitution from the offender, and the principle of reformation").

[47] *Duncan*, 782 P.2d at 304.

[48] *Id.*

nature of an offender's prior offense as part of the totality of circumstances to be weighed when assessing the question of manifest injustice.[49]

Our holding in *Duncan* applies to cases involving the two non-statutory mitigators recognized in *Collins*. Because the legislature has expressly overridden our decision in *Collins*, neither of the non-statutory mitigators discussed in *Collins* (a defendant's lack of prior sex offenses, or a defendant's good prospects for rehabilitation) can be treated as non-statutory mitigators as of July 1, 2013.[50] The legislature also made clear that these two factors, standing alone, are insufficient as a matter of law to justify a referral to the three-judge sentencing panel under the manifest injustice prong.[51]

But this does not mean that these factors play no role in the court's overall *Chaney* analysis; they still remain factors to be considered as part of the larger totality of the circumstances that the sentencing court must assess in determining whether the prescribed presumptive range of imprisonment is manifestly unjust in a particular defendant's case. Indeed, to conclude otherwise would create obvious due process and equal protection problems. The *Chaney* criteria apply to all sentences under Alaska law, and the legislative intent behind the 2013 amendments to AS 12.55.165 and AS

---

[49] *Id.*

[50] *See* AS 12.55.165(c) (prohibiting a court from referring a case to the three-judge panel if the request is "*based solely on the claim* that the defendant, either singly or in combination, has (1) prospects for rehabilitation that are less than extraordinary; or (2) a history free of unprosecuted, undocumented, or undetected sexual offenses") (emphasis added).

[51] *See* AS 12.55.175(f) (prohibiting a finding of manifest injustice "*based solely on the claim* that the defendant, either singly or in combination, has (1) prospects for rehabilitation that are less than extraordinary; or (2) a history free of unprosecuted, undocumented, or undetected sexual offenses") (emphasis added).

12.55.175 was precisely to ensure that sex offenders were not judged under standards *different* than the standards that apply to other offenders.[52]

Here, the sentencing judge referred Seigle's case to the three-judge sentencing panel based both on a finding of extraordinary potential for rehabilitation and on a finding that any sentence within the presumptive range would be manifestly unjust. The three-judge panel rejected the non-statutory mitigating factor of extraordinary potential for rehabilitation, finding that Seigle only had good potential for rehabilitation. But the three-judge panel agreed with the sentencing judge that a sentence within the presumptive range of 20 to 30 years would be manifestly unjust in Seigle's particular case.

The State argues that the three-judge panel erred in considering Seigle's good prospects for rehabilitation as part of its larger manifest injustice analysis. According to the State, once the three-judge panel concluded that Seigle's prospects for rehabilitation were insufficient, standing alone, to justify a departure from the presumptive range, the panel was precluded from considering those good prospects for rehabilitation for any other purpose — including as part of the totality of the circumstances that led the panel to conclude that a sentence within the presumptive range would be manifestly unjust in Seigle's case.

But as we have just explained, a determination of whether a particular sentence will result in manifest injustice must be made under the totality of the circumstances presented by the defendant's case. It was therefore appropriate for the three-judge panel to consider *all* of the circumstances of Seigle's case, including those circumstances (such as Seigle's age, lack of prior criminal history, and good employment history) that led to the original conclusion that he had "good prospects" for rehabilitation.

---

[52] *See* Ch. 43, § 1, SLA 2013.

It was also appropriate for the three-judge panel to consider the legislative findings that accompanied the 2006 sentencing increases when assessing whether it would be manifestly unjust to sentence Seigle within the presumptive range.[53] These legislative findings continue to provide guidance to the courts by explaining why the legislature believed that it was necessary to greatly increase the sentences for these types of offenders and these types of offenses. Those findings therefore provide the framework for understanding the legislative intent behind the presumptive ranges for sexual felonies, and they are a critical tool for the courts in assessing when, in the legislature's own words, a case may "cry out for mercy."[54]

*The State's argument that the three-judge panel abdicated its responsibility to make an independent manifest injustice finding*

The State's final argument is that the three-judge sentencing panel failed to independently consider whether the presumptive sentence would be manifestly unjust in Seigle's case. We find no merit to this claim.

As already mentioned, the sentencing judge in this case, Judge Volland (who was also the trial judge), found that it would be manifestly unjust to sentence Seigle to a prison term within the presumptive range. Judge Volland further declared that, in

---

[53] *See* 2006 Senate Journal 2209-12.

[54] *Id.* at 2214 (noting that "the criminal justice system often weeds these cases out in the referral and plea bargaining process" but that "the courts of Alaska will be able to avoid manifestly unjust sentences in appropriate cases" by applying statutory mitigating factors or referring cases to the three judge-panel); *see also Lloyd v. State*, 672 P.2d 152, 154 (Alaska App. 1983) ("Although the legislature decided to curtail the sentencing discretion of judges by enacting the highly regimented system of presumptive sentencing, it nevertheless recognized that cases will inevitably arise in which the subjective judgment of the sentencing court should take precedence over the objective limits imposed by statute. The manifest injustice standard and the three-judge sentencing panel were created for such cases.").

his view, a sentence of 10 years to serve would appropriately serve the *Chaney* criteria in Seigle's case. In making this finding, the judge relied in part on his own assessment of the witnesses and the evidence presented at trial.

The three-judge panel rejected Judge Volland's sentencing recommendation, ultimately sentencing Seigle to serve 15 years. This sentence was five years below the low end of the applicable presumptive range, but five years more than what Judge Volland believed was necessary under the *Chaney* criteria. Although the three-judge panel's explanation for its sentence is not as detailed as Judge Volland's, it is clear that the panel did not abdicate their responsibility to independently assess the totality of the circumstances presented in Seigle's case and to make their own determination of manifest injustice under the *Chaney* criteria.

We further note that even if we had concerns about the three-judge panel's assessment of the relative weight of various sentencing criteria, our authority to remedy any perceived flaws is limited. Seigle did not appeal his sentence, and the State's right to appeal a sentence "is limited by the prohibitions against double jeopardy contained in the United States Constitution and the Alaska Constitution."[55]

Although the State frames its cross-appeal as addressing only the "legality" of the sentence that Seigle received, many of the State's arguments are not directed at the panel's authority to impose the sentence in this case, but rather at the panel's exercise of its sentencing discretion to impose a sentence that the State apparently perceives as too lenient. Pursuant to AS 22.07.020(b) and (d), the State is entitled to challenge a criminal sentence on the ground that it is too lenient, but in such cases, this Court has no authority

---

[55] AS 22.07.020.

to revise the defendant's sentence. We are limited to issuing an advisory opinion disapproving the sentence.[56]

Here, the three-judge panel concluded, after considering permissible factors, that manifest injustice would result from imposition of a sentence within the presumptive range. The three-judge panel was therefore authorized under former AS 12.55.175 to impose the sentence that it did.

To the extent that the State seeks to challenge Seigle's sentence as illegal, we conclude that the challenge has no merit. And to the extent that the State seeks to challenge Seigle's sentence as overly lenient, we likewise conclude that the challenge has no merit. Having independently reviewed the sentencing record in this case, we conclude that the findings of the trial judge and the three-judge panel are well-supported by the record, and that the sentence Seigle received was not clearly mistaken.[57]

*Conclusion*

The sentencing decision of the three-judge sentencing panel is AFFIRMED.

---

[56] AS 22.07.020(b); *see also Forster v. State*, 236 P.3d 1157, 1173 (Alaska App. 2010).

[57] *See McClain v. State*, 519 P.2d 811, 813-14 (Alaska 1974).