*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| YAKO W. COLLINS, | ) |
| | ) Supreme Court No. S-18175 |
| Petitioner, | ) |
| | ) Court of Appeals No. A-12816 |
| v. | ) |
| | ) Superior Court No. 3PA-08-00803 CR |
| STATE OF ALASKA, | ) |
| | ) O P I N I O N |
| Respondent. | ) |
| | ) No. 7768 – May 9, 2025 |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Samantha Cherot, Public Defender, Anchorage, for Petitioner. Eric A. Ringsmuth, Assistant Attorney General, Anchorage, and Treg Taylor, Attorney General, Juneau, for Respondent.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

MAASSEN, Chief Justice.

## I. INTRODUCTION

This is a sentencing appeal. Defendant Yako Collins was convicted of first-degree sexual assault and sentenced within the presumptive range. The superior court denied Collins's request for referral to the three-judge sentencing panel pursuant

to AS 12.55.165(a), and Collins appealed. In *Collins I* the court of appeals identified two non-statutory mitigating factors that could entitle Collins to referral to the three-judge sentencing panel.[1] The court of appeals remanded to the superior court for consideration of those factors in deciding whether to make the referral.[2]

We granted the State's petition for hearing. In 2013, while the matter was pending before us, the legislature amended the relevant statutes,[3] rejecting the newly-identified *Collins I* non-statutory mitigating factors as standalone bases for referral to the three-judge sentencing panel. We then dismissed the State's petition as improvidently granted.

The superior court, applying the 2013 amended statutes to Collins, affirmed his original sentence; Collins again appealed. In *Collins II* the court of appeals relied on the doctrine of clarifying legislation to conclude that the 2013 legislative amendments "did not alter Alaska sentencing law, but instead clarified it," and the amended statutes could therefore be applied to Collins without violating the constitutional prohibition against ex post facto laws.[4] The court of appeals concluded that although Collins could seek referral to the three-judge sentencing panel under the sentencing statutes' "manifestly unjust" catch-all, he could not seek referral based solely on the factors identified in *Collins I*.[5] Collins petitioned for hearing.

We granted the petition and asked the parties to address two questions. First, "did the court of appeals correctly determine that [the 2013 legislative amendments] did not change, but merely clarified, prior law?" And second, "does a

---

[1]    *Collins v. State* (*Collins I*), 287 P.3d 791, 797 (Alaska App. 2012).

[2]    *Id.*

[3]    Ch. 43, §§ 1, 22-23, 46, SLA 2013.

[4]    *Collins v. State* (*Collins II*), 494 P.3d 60, 73 (Alaska App. 2021).

[5]    *Id.*

judicial determination that legislation affecting the criminal law clarifies, rather than changes, the prior law mean that the legislation does not violate the ex post facto clause?"

We answer the second question in the negative, relying on two constitutional principles: the separation of powers and the prohibition on ex post facto laws. Regardless of whether legislation was intended to "clarify" the intent of an earlier legislature, the new law — if substantive — cannot be applied retroactively if in the meantime this court or the court of appeals has given the earlier law a different interpretation. But because the court of appeals in *Collins II* did not address the State's argument that the 2013 legislation was merely procedural and could be applied to Collins without violating his substantive rights, we reverse *Collins II* and remand to the court of appeals for its consideration of that argument.

## II.     FACTS AND PROCEEDINGS

### A.     The Statutory Context At The Time Of Collins's Original Sentencing

In 2006 the Alaska Legislature amended the sentencing guidelines for many criminal sex offenses.[6] Yako Collins's crime — first degree sexual assault by a first-time felony offender against a person over the age of 13 — was committed in 2008; he was therefore subject to a presumptive sentencing range that had been increased from 8 to 12 years to 20 to 30 years.[7]

The statutes allow variations from the presumptive ranges, but any variance must "be based on the totality of the aggravating and mitigating factors set out in [AS 12.55.155(c) and (d)]."[8] In those two subsections the legislature listed 37 "factors in aggravation" that, if proven, "may allow imposition of a sentence above the

---

[6]     Ch. 14, § 4, SLA 2006.

[7]     AS 12.55.125(i)(1)(A)(ii); *see also* ch. 14, § 4, SLA 2006.

[8]     AS 12.55.155(b).

[statutory] presumptive range" and 21 "factors in mitigation" that, if proven, "may allow imposition of a sentence below the [statutory] presumptive range."[9] But "[w]hen an offense is subject to a presumptive range of imprisonment and no statutory mitigating factor has been proven, a sentencing judge has no discretion to impose a sentence below the low end of the presumptive range."[10]

The presumptive sentencing ranges do come with an escape valve; AS 12.55.165(a) requires referral to a three-judge sentencing panel if "the [sentencing] court finds by clear and convincing evidence that manifest injustice would result from failure to consider relevant aggravating or mitigating factors not specifically included in AS 12.55.155 or from imposition of a sentence within the presumptive range, whether or not adjusted for aggravating or mitigating factors."[11] On referral, the three-judge panel reviews "all pertinent files, records, and transcripts, including the findings and conclusions of the judge who originally heard the matter," and if it agrees with the referring judge's "manifest injustice" finding, it is required to sentence the defendant according to a different and more lenient set of statutory guidelines.[12] "If the panel does not find that manifest injustice would result, it shall remand the case to the sentencing court, with a written statement of its findings and conclusions, for sentencing under AS 12.55.125."[13]

---

**9** AS 12.55.155(a), (c), (d).

**10** *Collins I*, 287 P.3d 791, 794 (Alaska App. 2012).

**11** AS 12.55.165(a).

**12** AS 12.55.175(b) (permitting sentence below presumptive range); *but see* AS 12.55.175(c) ("The three-judge panel may in the interest of justice sentence the defendant to any definite term of imprisonment up to the maximum term provided for the offense or to any sentence authorized under AS 12.55.015.").

**13** AS 12.55.175(b).

### B.    The 2009 Superior Court Conviction And Sentencing

In 2009 a jury convicted Collins of sexually assaulting his then-girlfriend's 16-year-old sister.[14]   He was sentenced to 25 years with five years suspended and 15 years of probation; his sentence of 20 years to serve was at the low end of the presumptive range established for his crime by the 2006 legislation.[15]

Collins asked the court to refer his case to the three-judge sentencing panel.  He argued that a sentence in the presumptive range would be manifestly unjust given that he had no significant criminal history, was a person of "remarkably good character," and had an "extraordinary" potential for rehabilitation.  The sentencing judge denied Collins's motion, concluding that his case was not exceptional enough to justify referral to the three-judge panel.[16]

### C.    The Court of Appeals' Decision In *Collins I*

Collins appealed his conviction and sentence.[17]   The court of appeals affirmed the conviction but not the sentence, which it remanded to the superior court for reevaluation of whether referral to the three-judge sentencing panel was warranted.[18]   The court observed that the legislative history of the 2006 sentencing statute "makes clear that the current sentencing ranges are based on legislative findings that the typical sex offender is a repeat offender with very poor prospects for rehabilitation."[19]   In light of this legislative history, the court "conclude[d] that defendants convicted of sex offenses — particularly, young defendants with no

---

[14]    The crime is described in more detail in *Collins I*, 287 P.3d at 792-93.

[15]    *Id.* at 793; *see also* Ch. 14, § 4, SLA 2006.

[16]    *Collins I*, 287 P.3d at 795.

[17]    *Id.* at 792.

[18]    *Id.* at 797.

[19]    *Id.* at 795 (citing 2006 S. Journal 2207-14).

significant criminal record — should be able to obtain referrals to the three-judge sentencing panel if they can show that these assumptions do not apply to them."[20] Defendants who carry that burden by clear and convincing evidence are entitled to have their cases referred to the three-judge panel for sentencing outside the presumptive ranges "because the legislature designed the presumptive ranges for sex offenders with significantly different characteristics."[21] The three-judge panel can then decide "whether, given all the circumstances of the case, it would be manifestly unjust to sentence the defendant to a term of imprisonment within the applicable presumptive range."[22]

Then-Judge Bolger dissented, contending that the court had established new mitigating factors purportedly "based on the legislative history of the 2006 sentencing legislation" but which "are not supported by this legislative history."[23] As for the first factor — whether the defendant has a history of unprosecuted offenses — Judge Bolger reasoned that "the problem with requiring proof of unreported offenses is that the offenses cannot be documented: The legislature found that only sixteen percent of victims report a sexual assault and that only twenty-seven percent of reported sex crimes result in an arrest."[24] Therefore, and because "[t]hese unreported and unprosecuted offenses will be unavailable to the sentencing judge[,] we should not make this routine circumstance the basis for a mitigating factor."[25] Judge Bolger further

---

[20]  *Id.* at 796.

[21]  *Id.* at 797.

[22]  *Id.*

[23]  *Id.* (Bolger, J., dissenting).

[24]  *Id.* at 798 (citations omitted).

[25]  *Id.*

observed that the existing statutory scheme,[26] as well as case law,[27] already relied on "aggravating factors for a prior history of aggravated assaultive behavior or a prior history of similar offenses."[28] Thus, he reasoned, "[i]f the prosecution cannot prove these aggravating factors, then the sentence properly belongs within the presumptive range; the absence of these factors does not make the case atypically mitigated."[29]

As for the second factor — whether the defendant has normal prospects for rehabilitation — Judge Bolger disagreed with the court's reasoning "that it would be manifestly unjust to sentence a sex offender with normal prospects for rehabilitation to a sentence within the normal presumptive sentencing range."[30] Rather, while observing that "a sex offender who poses a moderate risk of recidivism may still pose an unacceptable danger to the community," Judge Bolger concluded that "[w]e should maintain the same standard for a sex offender that we have previously established for other defendants, requiring the defendant to show particularly favorable prospects for rehabilitation in order to establish a non-statutory mitigating factor."[31]

In February 2013 we granted the State's petition for hearing.

---

[26]     *Id.* (first citing AS 12.55.155(c)(8); and then citing AS 12.55.155(c)(21)).

[27]     *Id.* (citing *Moore v. State*, 174 P.3d 770 (Alaska App. 2008); *Tazruk v. State*, 67 P.3d 687, 689 (Alaska App. 2003)).

[28]     *Id.* (citations omitted).

[29]     *Id.*

[30]     *Id.*

[31]     *Id.* at 798-99 (reiterating legislature's recognition "that sex offenses can have a serious impact on the victim and society" and reasoning that "it does not follow that it would be manifestly unjust to sentence a sex offender with a moderate risk of recidivism to a sentence within the presumptive range").

**D.   The 2013 Legislative Response:  Ch. 43, §§ 1, 22-23, 46, SLA 2013**

While the *Collins I* petition for hearing was pending in our court, the legislature amended the statutes governing referrals to the three-judge sentencing panel.[32]  The session law included the following findings:

> (1) in 2006, the legislature did not intend, by enacting ch. 14, SLA 2006, and the legislature does not now intend to create new or additional means for a defendant convicted of a sexual felony and sentenced under AS 12.55.125(i) to obtain referral to a three-judge panel;
>
> (2) the legislature did not, in 2006, intend nor does the legislature now intend for a court to create new or additional means for a defendant convicted of a sexual felony and sentenced under AS 12.55.125(i) to obtain referral to a three-judge panel.[33]

The legislature expressly stated its intent "to overturn the majority decision in [*Collins I*], and to endorse the dissenting opinion in the same case."[34]

The legislature accordingly added a new subsection (c) to AS 12.55.165, the statute defining the circumstances under which sentencing courts may refer cases to the three-judge panel:

> (c) A court may not refer a case to a three-judge panel . . . if the defendant is being sentenced for a sexual felony under AS 12.55.125(i) and the request for the referral is based solely on the claim that the defendant, either singly or in combination, has
>
> > (1) prospects for rehabilitation that are less than extraordinary; or

---

[32]   Ch. 43, §§ 1, 22-23, SLA 2013.

[33]   *Id.* § 1(b).

[34]   *Id.* § 1(c); *see also id.* § 1(a) (reaffirming "the findings made by the Senate letter of intent for ch. 14, SLA 2006, as published in the 2006 Senate Journal dated February 16, 2006").

(2) a history free of unprosecuted, undocumented, or undetected sexual offenses.[35]

And the legislature also amended AS 12.55.175, the statute creating and describing the responsibilities of the three-judge panel, by adding subsection (f):

> (f) A defendant being sentenced for a sexual felony under AS 12.55.125(i) may not establish, nor may the three-judge panel find under (b) of this section or any other provision of law, that manifest injustice would result from imposition of a sentence within the presumptive range based solely on the claim that the defendant, either singly or in combination, has
> > (1) prospects for rehabilitation that are less than extraordinary; or
> > (2) a history free of unprosecuted, undocumented, or undetected sexual offenses.[36]

These amendments went into effect on July 1, 2013.[37] Section 46 of the session law states that the amendments to AS 12.55.165 and AS 12.55.175, among other changes to the law, "apply to offenses committed before, on, or after the effective date of this Act."[38]

In February 2014 we dismissed the State's petition for hearing in *Collins I* as improvidently granted, meaning that the court of appeals' opinion remained undisturbed.[39]

---

[35]     *Id.* § 22.

[36]     *Id.* § 23.

[37]     *Id.* § 48; *see also* 2013 S. Journal 1308.

[38]     *Id.* § 46(b).

[39]     *See K.L.F. v. State*, 820 P.2d 1076, 1077 (Alaska 1991) (Compton, J., dissenting) (noting that "[t]he net result" of the dismissal of a petition as "improvidently granted" "is that the decision of the court of appeals stands as the most recent [judicial] pronouncement" on the issue); *see also Lucier v. Steiner Corp.*, 93 P.3d 1052, 1052 n.1 (Alaska 2004) (applying "to cases such as the present where petitions for review are

### E. The Superior Court Sentencing Following *Collins I*

After we dismissed the petition for hearing, the superior court, following the court of appeals' instructions in *Collins I*, again considered whether Collins's case should be referred to the three-judge sentencing panel. In a February 2017 order, the superior court first acknowledged the significant statutory changes that had been made since *Collins I* was decided. The court observed that its "core function" was "to apply the law as it exists at the time of decision and so as to avoid absurd results." "The present state of the law," the court opined, "forbids the Court from engaging in the legal inquiry required under *Collins* [*I*] in any case other than this one," though in the court's view *Collins I* did "not similarly bind the three judge panel." The court reasoned, therefore, that if it were to "determine that referral to the three judge panel is proper, the three judge panel would be obliged to apply the law as it exists now: that is, the three judge panel is prohibited from engaging in the same legal inquiry" that *Collins I* required the sentencing judge to undertake. The court concluded that it should avoid "[t]his absurd result — that the Superior Court should refer a matter to the three judge panel to consider a matter it may not consider." The court therefore stood by its original decision that referral to the three-judge panel was not justified.

Collins again appealed to the court of appeals.

### F. The Court Of Appeals Decision In *Collins II*

On his second sentence appeal Collins argued that "because his crime was committed before the 2013 session law was enacted, the ex post facto clauses of the federal constitution and the Alaska constitution prohibit the courts from applying the

---

initially granted and then dismissed as improvidently granted" our earlier statement in *Contento v. Alaska State Hous. Auth.*, 398 P.2d 1000, 1001 (Alaska 1965) that "[a] denial of a petition for review of an interlocutory order does not mean that we either approve or disapprove of the order sought to be reviewed, but merely that we decline to pass judgment at all on the action of the trial court").

2013 session law to him."[40]  In addition, and contrary to the superior court's conclusion, Collins argued that both the sentencing judge *and* the three-judge panel on referral were "required to apply the law as stated in the *Collins* [*I*] majority opinion."[41]

The court of appeals disagreed.  It concluded that it had been wrong in *Collins I* when it recognized non-statutory mitigating factors, because "despite what was said in the *Collins* [*I*] majority opinion, the 2006 sentencing statute did not expand the grounds for seeking referral to the three-judge panel."[42]  Collins therefore "was not entitled to seek referral to the three-judge panel based solely on the two grounds identified in the *Collins* [*I*] majority opinion," though he could still argue for referral "by asserting that the prescribed presumptive sentencing range is manifestly unjust, given the circumstances of his case."[43]  The court reached this conclusion by "examin[ing] and apply[ing] the doctrine of 'clarifying legislation.' "[44]

The court explained that under this doctrine "there are times when new legislation does not *change* existing law, but instead only clarifies existing law."[45]  It recognized that the doctrine has "special significance when, as in the present case, the statute at issue is a penal statute," because the ex post facto clauses of the United States and Alaska constitutions "forbid[] the legislature from enacting or amending a penal statute so as to retroactively criminalize, or increase the penalty for, acts that have

---

[40]     *See Collins II*, 494 P.3d 60, 64 (Alaska App. 2021); *see also* U.S. Const. art. I, § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."), § 10, cl. 1 ("No state shall . . . pass any Bill of Attainder [or] ex post facto law[.]"); Alaska Const. art. I, § 15 ("No bill of attainder or ex post facto law shall be passed.").

[41]     *Collins II*, 494 P.3d at 64.

[42]     *Id.* at 65.

[43]     *Id.* (citing AS 12.55.165-.175).

[44]     *Id.* at 64-65 ("This doctrine of clarifying legislation is central to our resolution of Collins's appeal.").

[45]     *Id.* at 64 (emphasis in original).

already been committed."[46] The court further explained, however, that a legislative clarification does not run afoul of the prohibition on ex post facto laws because "the courts treat the pre-existing version of the statute as having *always* meant what the clarifying enactment declares it to mean."[47] "Thus, there has been no change in the law — and no issue of retroactivity when courts apply the now-clarified statute to criminal cases that arose before the legislature enacted the clarifying legislation."[48]

The court highlighted "[t]he main limitation on this doctrine of clarifying legislation," which is based on separation of powers principles: "the legislature is not permitted to 'clarify' the meaning of a statute that conflicts with an interpretation that has already been announced by the jurisdiction's highest court."[49] Noting that clarifying legislation helps a court interpret an earlier statute whose meaning is otherwise "in doubt," the court explained that "as a matter of law, a court cannot be 'in doubt' about the meaning of the earlier statute when, with regard to the relevant issue, that statute has already been construed by the highest court in the jurisdiction."[50] For the case at hand, an interpretation placed on the statute by the "highest court" necessarily controls over any subsequent legislative attempt to interpret the statute differently.[51]

To "illustrate the application of this doctrine," the court of appeals relied primarily on two California cases: *McClung v. Employment Development*

---

[46] *Id.* at 64-65 (citing *Collins v. Youngblood*, 497 U.S. 37, 43 (1990); *State v. Creekpaum*, 753 P.2d 1139, 1142 (Alaska 1988)); *see also* note 40, *supra*.

[47] *Collins II*, 494 P.3d at 65 (emphasis in original).

[48] *Id.*

[49] *Id*. at 65-66 ("This limitation stems from the principle that the judicial branch of government is the ultimate arbiter of a statute's meaning.").

[50] *Id.* at 66 (quoting *United States v. Stafoff*, 260 U.S. 477, 480 (1923)).

[51] *Id.*

*Department*[52] and *Western Security Bank, N.A. v. Superior Court*.[53] The court noted that in *Western Security Bank* the California Supreme Court held that new legislation amending a statute — and expressing an "intent to 'confirm and clarify the law' and 'abrogate the holding' " of a recent court of appeal decision — merely clarified the existing law.[54] And the court of appeals relied on *McClung* for the proposition that "a legislative amendment could *not* be considered a 'clarification'[] because the legislative amendment purported to overturn a final decision of the [California] supreme court."[55] The court of appeals concluded from these cases that "the doctrine of clarifying legislation potentially applies [to] situations where a jurisdiction's highest court has not yet issued a controlling interpretation of the pre-existing statute."[56]

The court of appeals next reviewed our prior applications of the doctrine of clarifying legislation.[57] The court cited *Municipality of Anchorage v. Sisters of Providence in Washington*[58] for its holding that "the fact that the Alaska legislature had acted in response to an ongoing dispute about the meaning of the pre-existing version of the law" was "the most persuasive factor" in determining that subsequent legislation was a clarification of existing law.[59] The court cited *Matanuska-Susitna Borough v. Hammond*[60] for the proposition that the legislature's *failure* to amend a particular term in a tax statute, while amending other portions of it following a superior court's ruling

---

[52]   99 P.3d 1015, 1020 (Cal. 2004).

[53]   933 P.2d 507, 514 (Cal. 1997); *Collins II*, 494 P.3d at 66.

[54]   *Collins II*, 494 P.3d at 66 (quoting *W. Sec. Bank, N.A.*, 933 P.2d at 513).

[55]   *Id.* (emphasis in original) (quoting *McClung*, 99 P.3d at 1020).

[56]   *Id.*

[57]   *Id.* at 67-69.

[58]   628 P.2d 22, 28 (Alaska 1981).

[59]   *Collins II*, 494 P.3d at 67-68 (citing *Sisters of Providence*, 628 P.2d at 28).

[60]   726 P.2d 166, 176 & n.21 (Alaska 1986).

on what the term meant, was "an implicit legislative endorsement of the pre-existing statutory language — and, more particularly, an endorsement of the superior court's ruling" on the term's meaning.[61]  The court next described limitations we had placed on the doctrine:  that it "cannot be used to alter the meaning of a pre-existing statute which was *not* ambiguous regarding the issue being litigated";[62] and further, "that little weight, if any, should be given to the legislature's *statements* that it acted to 'clarify' the intent of a previous legislature."[63]  The court noted our most recent application of these interpretive rules in *Angelica C. v. Jonathan C.*, in which we stressed that a subsequent legislature's statement of an earlier legislature's intent was persuasive at best but concluded that the wording and structure of the new law supported a clarifying intent.[64]

The court of appeals then summarized the governing legal principles it derived from these cases:

> The law presumes that any new statute constitutes a change in the law rather than a clarification of pre-existing law, but this presumption can be rebutted by the wording and legislative history of the new statute, by the context in which the legislature acted, and by whether the wording of the new statute is consistent with a reasonable interpretation of the pre-existing statute.[65]

---

[61]     *Collins II*, 494 P.3d at 68 (citing *Hammond*, 726 P.2d at 176 & n.21).

[62]     *Id.* (emphasis in original) (citing *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1252 (Alaska 1988)).

[63]     *Id.* at 68-69 (emphasis in original) (relying thereafter on, among other cases, *Hageland Aviation Servs., Inc. v. Harms*, 210 P.3d 444, 448 n.12 (Alaska 2009)). The court also discussed *Angelica C. v. Jonathan C.*, 459 P.3d 1148 (Alaska 2020), as the "most recent example" of our applying the "doctrine of clarifying legislation." *Collins II*, 494 P.3d at 68-69.

[64]     *Id.* at 69 (citing *Angelica C.*, 459 P.3d 1148, 1157-58 (Alaska 2020)).

[65]     *Id.*

Applying the doctrine as thus summarized to Collins's case, the court of appeals began "with the presumption that any new legislation represents a change in the law" and framed the question as "whether that presumption is rebutted by the wording and legislative history of the 2013 session law, as well as the circumstances that prompted the legislature to act."[66] The court summarized the 2013 legislature's stated purpose while acknowledging that that statement of purpose was not binding on the court:

> [T]he legislature enacted the 2013 session law in quick response to [the court of appeals'] decision in *Collins*[ *I*] . . . [and] its purpose was (1) to clarify the intent of the pre-existing sentencing statute, (2) to disavow the interpretation of the law adopted by the *Collins* [*I*] majority, and (3) to endorse the interpretation advocated in Judge Bolger's dissent. Finally, the legislature acted while this issue of statutory interpretation was still pending in front of the supreme court — i.e., still unresolved by the highest judicial authority in Alaska.[67]

Given these circumstances, and "given the fact that there was reasonable debate regarding the proper interpretation of the pre-existing law (as demonstrated by this Court's two-to-one decision in *Collins* [*I*])," the court concluded that the 2013 session law "represents a clarification of Alaska's pre-existing sentencing law rather than a change to that law"; the court therefore had to "treat the 2006 sentencing statute as if it had always embodied the legislature's later clarification."[68] As a consequence, "the ex post facto clauses of the federal and state constitutions do not bar the courts from applying the law stated in the 2013 session law to cases that arose before the legislature

---

[66]    *Id.* at 69-70.

[67]    *Id.* at 70.

[68]    *Id.*

acted — including Collins's own case, which provided the impetus for the legislature's clarifying enactment."[69]

The court of appeals' ultimate holding, therefore, was that "Collins and other similarly situated offenders are not entitled to seek referral of their cases to the three-judge sentencing panel solely on the two grounds announced in the *Collins* [*I*] majority opinion."[70]  Collins could, however, still "seek a referral to the three-judge panel based on the ground that his prescribed presumptive sentencing range would be manifestly unjust under the circumstances of his case" — the "totality" of which could include argument and evidence "(1) that he has committed no prior sexual offenses, and (2) that he has good prospects for rehabilitation."[71]

Collins filed a petition for hearing, which we granted and which we now address.

### G.    The Arguments Before Us

Collins argues that we "should vacate *Collins II* and direct the superior court to apply *Collins* [*I*] to Collins himself."  He asserts that "*Collins* [*I*] was a binding appellate court interpretation of Alaska's sentencing statute" and the legislature was not empowered to overturn it retroactively.  He argues that *Collins II*'s interpretation to the contrary violates both the separation of powers doctrine and the ex post facto clauses of the United States and Alaska constitutions.  Collins also argues that we have "largely rejected the 'doctrine of clarifying legislation' set out by the court of appeals in *Collins II*."  And he argues that even if our case law allowed recognition of clarifying legislation under some circumstances, that would "not include 'clarifying' a statute that has already

---

[69]    *Id.*

[70]    *Id.*

[71]    *Id.* at 71.

been interpreted in a binding appellate court decision — and certainly not 'clarifying' a criminal statute to a criminal defendant's disadvantage."

In response, the State argues that *Collins II* was correctly decided. It asks that "[t]o the extent *Collins I* is not overruled by *Collins II* or by Ch. 43, §§ 1, 22, 23 SLA 2013, this court should explicitly overrule the two new stand-alone non-statutory mitigating factors," while pointing out that *Collins II* still allows "courts to consider the *Collins I* factors — not as stand-alone non-statutory mitigating factors — but rather under the totality of the circumstances, in evaluating whether a sentence within the presumptive range is manifestly unjust." The State asks that we affirm Collins's sentence.

## III.   STANDARD OF REVIEW

We apply de novo review to questions of law, including matters of statutory[72] and constitutional[73] interpretation. When we consider an issue de novo, we "adopt the rule which is most persuasive in light of precedent, reason, and policy."[74]

## IV.   DISCUSSION

Based on the two questions we asked the parties to address, we frame the issue on this petition as follows: whether a legislative amendment, clearly intended by the legislature as "clarifying" the meaning of an earlier statute, may be applied retroactively to overrule a binding judicial interpretation of the statute in a particular case. Subject to the "substantive/procedural" distinction we discuss in the final section of this discussion, we hold that retroactive application of the later statute is not allowed in such circumstances, based primarily on two constitutional precepts: the separation of powers doctrine and the prohibition on ex post facto laws.

---

[72]   *Doe v. State*, 189 P.3d 999, 1002-03 (Alaska 2008).

[73]   *Dara v. Gish*, 404 P.3d 154, 159 (Alaska 2017).

[74]   *Doe*, 189 P.3d at 1003 (quoting *State v. Murtagh*, 169 P.3d 602, 606 (Alaska 2007)).

**A.** **Two Constitutional Principles — Separation Of Powers And The Prohibition On Ex Post Facto Laws — Shape Our Decision.**

The first constitutional precept on which our decision today turns is the separation of powers. "[T]he Alaska Constitution follows the traditional framework with three branches — executive, legislative, and judicial — of American government."[75] Each branch has its distinct constitutional function. "The Alaska Constitution vests legislative power in the legislature; executive power in the governor; and judicial power in the [courts]. The separation of powers doctrine limits the authority of each branch to interfere in the powers that have been delegated to the other branches."[76] Thus, the courts are "prohibit[ed] from enacting legislation or redrafting defective statutes."[77] But while the courts cannot draft new laws, it is ultimately their responsibility to interpret existing ones.[78]

When carrying out this responsibility, courts "are bound to give effect to the legislative intent discerned from the text, legislative history, and underlying statutory purpose."[79] This kind of contemporaneous legislative information is clearly

---

[75] *Meyer v. Alaskans for Better Elections*, 465 P.3d 477, 481 n.20 (Alaska 2020).

[76] *Alaska Pub. Int. Rsch. Grp. v. State*, 167 P.3d 27, 35 (Alaska 2007) (citation omitted).

[77] *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1131 (Alaska 2017) (quoting *State v. Campbell*, 536 P.2d 105, 111 (Alaska 1975), *overruled on other grounds by Kimoktoak v. State*, 584 P.2d 25 (Alaska 1978)).

[78] *See Alaska Pub. Int. Rsch. Grp.*, 167 P.3d at 43 ("The judiciary alone among the branches of government is charged with interpreting the law." (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803))); *see also Marbury*, 5 U.S. at 177 ("It is emphatically the province and duty of the judicial department to say what the law is.").

[79] *Native Vill. of Kwinhagak v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 542 P.3d 1099, 1114 (Alaska 2024).

critical to the courts' interpretive task. But the question here concerns a *later* legislature's statement of an *earlier* statute's meaning — the 28th Alaska Legislature's opinion as to what the 24th Alaska Legislature intended almost a decade earlier. What effect does that opinion have on the courts' task of statutory interpretation?

The answer is that we give the later legislative opinion consideration but not conclusive authority, as the court of appeals recognized in *Collins II*.[80] We explained 36 years ago:

> While the legislature is fully empowered to declare present law by legislation, it is not institutionally competent to issue opinions as to what a statute passed by an earlier legislature meant. If the legislature were in some form to declare its opinion as to the meaning of prior law, that declaration would be entitled to the same respect that a court would afford to, for example, an opinion of a learned commentator; that is, the court would examine the reasoning offered in support of the opinion and either reject or accept it based on the merit of the reasons given.[81]

---

[80] 494 P.3d 60, 67 (Alaska App. 2021) (observing that "the legislature's action [declaring an intent to clarify an earlier statute] is only a factor that the courts should consider when determining the meaning and effect of the pre-existing statute").

[81] *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1252 (Alaska 1988). We have applied this interpretive canon repeatedly. *See, e.g.*, *Angelica C. v. Jonathon C.*, 459 P.3d 1148, 1157-58 (Alaska 2020) (quoting *Hageland Aviation Servs., Inc. v. Harms*, 210 P.3d 444, 448 n.12 (Alaska 2009) — which quoted *Hillman* — in support of principle that despite legislature's declaration of clarifying purpose, "we independently decide whether the recent amendments change the effect [of a statute] or merely clarify its meaning"); *State v. Dupier*, 118 P.3d 1039, 1046 n.29 (Alaska 2005) (declining to treat legislative amendment as clarification of pre-existing law and relying upon *Hillman*); *Hickel v. Cowper*, 874 P.2d 922, 925 n.7 (Alaska 1994) (noting that deference to "legislature's interpretation of the constitutional terms at issue in this case . . . is at most . . . a single tool for use by this court in interpreting the constitution"); *Flisock v. State, Div. of Ret. & Benefits*, 818 P.2d 640, 645 (Alaska 1991) (noting that "legislative history of the 1982 amendments is of little help in determining the law in *1969*" (emphasis in original)).

The other constitutional principle central to our analysis is found in the ex post facto clauses of the United States and Alaska constitutions, which "forbid[] the legislature from enacting or amending a penal statute so as to retroactively criminalize, or increase the penalty for, acts that have already been committed."[82] The U.S. Supreme Court has held that retroactive changes to applicable sentencing ranges are subject to this prohibition.[83] Legislatures may always, of course, say what the law is going forward, and they may by statute clarify prior law.[84] But "courts must begin with the presumption that any new legislation represents a *change* to pre-existing law, not merely a clarification of pre-existing law."[85] And this is regardless of the legislature's own statements about whether it intends its amendment to be clarifying, since such statements, as we held in *Hillman*, are informative but not authoritative — much like "an opinion of a learned commentator."[86]

---

[82]    *Collins II*, 494 P.3d at 64-65; U.S. Const. art. I, § 9, cl. 3 ("No bill of attainder or ex post facto law shall be passed."); Alaska Const. art. I, § 15 (same).

[83]    *See, e.g.*, *Peugh v. United States*, 569 U.S. 530, 550 (2013) ("[T]he Ex Post Facto Clause forbids the [government] to enhance the measure of punishment by altering the substantive 'formula' used to calculate the applicable sentencing range." (alterations in original) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505 (1995))).

[84]    *See Collins II*, 494 P.3d at 65 n.7 (explaining that "[t]he legislature is vested with plenary power to change the substantive law prospectively, but it may not disturb vested substantive rights by retroactively changing the law that applies to completed events"; that "[t]he substantive legal consequence of past events is determined by the law in effect at the time of the event, and the determination of that law is for the courts to decide"; and that therefore, "[a] *fortiori*, the separation of powers doctrine prevents the legislature from changing the rule of decision in completed cases" (quoting *State v. Murray*, 982 P.2d 1287, 1289 (Ariz. 1999))).

[85]    *Id.* at 66.

[86]    *Hillman*, 758 P.2d at 1252.

**B.** **If Substantive, The 2013 Legislation Cannot Be Applied Retroactively To Collins In Contravention Of The Court Of Appeals' Preexisting Interpretation Of The Law As It Applied To His Case.**

The court of appeals in *Collins II* recognized that the legislature intended in 2013 to clarify the 2006 sentencing statutes and intended its clarification to have retroactive effect.[87] As the court of appeals explained, the legislature's intent was very clear, both from its express statements of purpose and from the historical context in which it was legislating.[88]

Despite the clarity of the legislature's intent in 2013, the court of appeals' task in *Collins II* was still to determine what the legislature intended in 2006, looking to the 2013 legislation only for interpretive help to the extent the court credited "the merit of the reasons given."[89] And the court of appeals had already interpreted the 2006 sentencing law itself in *Collins I*. We must conclude that the court in *Collins II* gave too much weight to the legislature's 2013 declaration of purpose and too little weight to its own preexisting and binding interpretation of the 2006 sentencing law.[90] However the 2013 amendments are characterized — whether as clarifying, amending, or

---

[87] *Collins II*, 494 P.3d at 69-70.

[88] *Id.*

[89] *Hillman*, 758 P.2d at 1252.

[90] The court of appeals' summary of the doctrine of clarifying legislation focuses on the *later* legislative intent — an interpretive aid at best — to the near exclusion of the *earlier* legislative intent, which should be determinative. Summarizing its analytical framework, the court concluded that the presumption "that any new statute constitutes a change in the law rather than a clarification of pre-existing law . . . can be rebutted by the wording and legislative history *of the new statute*, by the context in which *the [more recent] legislature acted*," and also "by whether the wording of *the new statute* is consistent with a reasonable interpretation of the pre-existing statute." *Collins II*, 494 P.3d at 69 (emphasis added). Unfortunately absent from this summary is an analysis of the original legislature's intent independent of the later legislature's opinion of that intent.

interpretative[91] — they necessarily *did* change the law, because the law at the time of the 2013 legislation was as the court of appeals had determined it to be in *Collins I*.

We quote with approval the court of appeals' explanation of "[t]he main limitation on this doctrine of clarifying legislation":

> The main limitation on this doctrine of clarifying legislation is that the legislature is not permitted to "clarify" the meaning of a statute in a way that conflicts with an interpretation that has already been announced by the jurisdiction's highest court. This limitation stems from the principle that the judicial branch of government is the ultimate arbiter of a statute's meaning.
>
> As the United States Supreme Court explained in *United States v. Stafoff*, a statute that purports to clarify the meaning of an earlier statute "might be of great weight" in assisting a court when the meaning of the earlier statute is "in doubt". But, as a matter of law, a court cannot be "in doubt" about the meaning of the earlier statute when, with regard to the relevant issue, that statute has already been construed by the highest court in the jurisdiction. In such instances, the high

---

[91] The most commonly cited text on statutory construction categorizes statutes like the 2013 amendments at issue here as "special interpretive statutes," which are those intended "to correct a judicial interpretation of a prior law which the legislature considers inaccurate." 1A NORMAN SINGER & SHAMBIE SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 27:4 (7th ed. 2023). According to Sutherland, special interpretive statutes are given only prospective effect, because "[a]ny other result would make the legislature a court of last resort," violating separation of powers principles. *Id.* (citing cases).

court's decision "must stand for the law" as it existed prior to the enactment of the purported clarifying legislation.[92]

The court of appeals then went on to discuss two California cases relevant to this limitation: *Western Security Bank, N.A.*, which held that a legislative change clarified a statute even though it was expressly intended to " 'abrogate the holding' of a California Court of Appeal decision issued in a previous year";[93] and *McClung*, which held that a legislative change "could *not* be considered a 'clarification', because the legislative amendment purported to overturn a final decision of the supreme court."[94]

The court of appeals plainly read this authority as meaning that it is only "the highest court in the jurisdiction" — here, the Alaska Supreme Court — that can resolve an issue of statutory interpretation such that the legislature cannot retroactively change it: "[T]he legislature acted while this issue of statutory interpretation was still pending in front of the supreme court — i.e., still unresolved by the highest judicial authority in Alaska"; and "there was reasonable debate regarding the proper interpretation of the pre-existing law (as demonstrated by [the court of appeals'] two-to-one decision in *Collins* [*I*])."[95]  But we disagree with this reasoning.

---

[92]    *Collins II*, 494 P.3d at 65-66 (citations omitted) (quoting *United States v. Stafoff*, 260 U.S. 477, 480 (1923)); *see also* SINGER & SINGER, *supra* note 91, at § 41:15 (stating that "a clarifying statute may not apply retroactively where it responds to a decision from a state's highest court, as such a judicial construction operates as if it were written into the original statute,"  and that this clarification doctrine limitation "is designed to avoid the separation-of-powers problem that would result if a legislature, under the guise of clarification, could overrule by enactment an authoritative judicial construction").

[93]    *Collins II*, 494 P.3d at 66 (citing *W. Sec. Bank, N.A. v. Superior Ct.*, 933 P.2d 507, 513 (Cal. 1997)).

[94]    *Id.* (emphasis in original) (quoting *McClung v. Emp. Dev. Dep't*, 99 P.3d 1015, 1020 (Cal. 2004)).

[95]    *Id.* at 70.

First, the California courts are not a clear analog for Alaska's. We have one court of appeals whose decisions, by statute, are authoritative statewide and binding on all lower courts unless superseded on discretionary review.[96] California, on the other hand, has six appellate districts comprising 19 divisions;[97] intermediate appellate decisions bind the lower courts but are sometimes in conflict, meaning that the trial courts have to decide which to follow.[98] And the California courts of appeal are not bound by each other's precedent.[99] In such a system it makes sense that only a supreme

---

[96] AS 22.07.020(g) ("A final decision of the court of appeals is binding on the superior court and on the district court unless superseded by a decision of the supreme court.").

[97] *See, e.g.*, Cal. Gov't. Code § 69100 ("The state is divided into six court of appeal districts."); *see also* Cal. Const. art. VI, § 3 ("The legislature shall divide the State into districts each containing a court of appeal with one or more divisions."); JUDICIAL COUNCIL OF CALIFORNIA, A VISITOR'S GUIDE TO THE CALIFORNIA COURTS OF APPEAL, https://www.courts.ca.gov/documents/ctappbro.pdf.

[98] *See, e.g., Auto Equity Sales, Inc. v. Superior Ct. of Santa Clara Cnty.*, 369 P.2d 937, 940 (Cal. 1962) ("Decisions of every division of the District Courts of Appeal are binding upon all the justice and municipal courts and upon all the superior courts of this state."); *id.* (noting that when appellate decisions conflict, "the court exercising inferior jurisdiction can and must make a choice between the conflicting decisions"); *see also McCallum v. McCallum*, 235 Cal. Rptr. 396, 400 n.4 (Cal. App. 1987) ("As a practical matter, a superior court ordinarily will follow an appellate opinion emanating from its own district even though it is not bound to do so. Superior courts in other appellate districts may pick and choose between conflicting lines of authority.")

[99] *Sarti v. Salt Creek Ltd.*, 85 Cal. Rptr. 3d 506, 510-11 (Cal. App. 2008) (recognizing that "there is no horizontal stare decisis in the California Court of Appeal. *This* court — this panel — is not bound by [a prior Court of Appeal decision] and we may take a more critical approach to that opinion." (emphasis in original) (citations omitted)); *In re Marriage of Shaban*, 105 Cal. Rptr. 2d 863, 870 (Cal. App. 2001) (acknowledging that "because there is no 'horizontal stare decisis' within the Court of Appeal, intermediate appellate court precedent that might otherwise be binding on a trial court is not absolutely binding on a different panel of the appellate court" (internal citation omitted)).

court decision will foreclose legislative attempts to retroactively "clarify" a debatable issue of statutory interpretation.

The difference in Alaska, with a single court of appeals, is significant. Alaska Statute 22.07.020(g) provides that "[a] final decision of the court of appeals is binding on the superior court and on the district court unless superseded by a decision of the supreme court." This provision, as the court of appeals has recognized, "codifies the principle of vertical stare decisis, under which lower courts are required to follow the precedent of higher courts."[100] "Thus, . . . if [the court of appeals] publishes [its] decision in a case, the statements of law in that case are precedent, binding on the trial courts, unless and until those statements of law are superseded by a decision of the Alaska Supreme Court."[101] As relevant here, this means that *Collins I* was the final and binding judicial interpretation of the 2006 sentencing laws at the time the legislature enacted the 2013 legislation clarifying that earlier law's intent. We had the opportunity to review *Collins I* on the first petition for hearing and dismissed the petition as improvidently granted in February 2014. Dismissal of the petition did not overrule *Collins I* or otherwise supersede its authority. By law, *Collins I* remained "binding on the superior court and on the district court."[102]

We recognize that the California cases on which the court of appeals relied make a distinction between the decisions of an intermediate appellate court and those of the supreme court in this context, as demonstrated by *Western Security Bank* and *McClung*.[103] We note also, however, that the court in *McClung*, describing its decision

---

[100]   *State v. Seigle*, 394 P.3d 627, 633 (Alaska App. 2017).

[101]   *Id.*

[102]   AS 22.07.020(g).

[103]   *W. Sec. Bank, N.A. v. Superior Ct.*, 933 P.2d 507, 520 (Cal. 1997) (deciding that amendment "simply clarified and confirmed the state of the law" despite

in *Western Security Bank*, explained that "the only judicial action that had interpreted the statute before the Legislature amended it was a Court of Appeal decision *that never became final*."[104] But under our statutes, again, the court of appeals' decision in *Collins I* was final when issued and remained so, having never been superseded by a decision of this court.[105]

The Washington courts have visited this subject a number of times, in cases both civil and criminal. The Washington court system, like California's, has a number of intermediate appellate courts that sometimes rule differently on the same issue and are not bound by each other's decisions.[106] But even in that context the

---

intervening Court of Appeal decision); *McClung v. Emp. Dev. Dep't*, 99 P.3d 1015, 1022 (Cal. 2004) (deciding that change in law was not clarification because there was intervening "final and definitive judicial interpretation" by California Supreme Court); *see also Lone Star Sec. & Video, Inc. v. Bureau of Sec. & Investigative Servs.*, 98 Cal. Rptr. 3d 559, 566 n.8 (Cal. App. 2009) (concluding that under *McClung*, statute was not impermissibly retroactive when "former [law] was not *finally and conclusively* interpreted by the courts because [intervening judicial decision] was a decision by the Court of Appeal, not the Supreme Court").

[104]      *McClung*, 99 P.3d at 1022 (emphasis added). The Court of Appeal's original decision in *Western Security Bank* apparently "never became final," *see McClung*, 99 P.3d at 1022, because, as the court later explained, "the Legislature accepted our invitation to address certain conflicting policy questions, [and] the Supreme Court transferred the case back to [the court of appeal] to vacate our prior opinion and to reconsider the matter in light of the statutory changes." *W. Sec. Bank, N.A. v. Superior Ct.*, 45 Cal. Rptr. 2d 664, 670 (Cal. App. 1995), *rev'd*, 933 P.2d 507 (Cal. 1997)).

[105]      *See* AS 22.07.020(g); *Seigle*, 394 P.3d at 633.

[106]      *See, e.g., In re Pers. Restraint of Arnold*, 410 P.3d 1133, 1142 (Wash. 2018) (holding that "one division of the Court of Appeals should give respectful consideration to the decisions of other divisions of the same Court of Appeals but one division is not bound by the decision of another division"); *id.* at 1141 ("We recognize that the reality of conflicting decisions will create some confusion. However, our current system of rigorous debate at the intermediate appellate level creates the best

Washington courts, when interpreting so-called clarifying legislation, have given weight to the decisions of intermediate appellate courts in a way that we find persuasive — as exhibiting the appropriate balance between deference to the legislature and preservation of the independent judicial function.

In *Johnson v. Morris*, the Washington Supreme Court considered whether a legislative amendment allowing the court to extend its delinquency jurisdiction over a juvenile from age 18 to age 21 could be applied retroactively.[107] The court had earlier held "that juvenile court commitment power was coterminous with a child's minority," meaning that it ended when the child turned 18.[108] The court in *Johnson* held that the extension of jurisdiction was an unconstitutional ex post facto law when applied to an 18-year-old who had previously been adjudged delinquent; it specifically rejected "the proposition that the legislature is empowered to retroactively 'clarify' an existing statute, when that clarification contravenes the construction placed upon that statute by this court."[109] The court continued: "Such a proposition is disturbing in that it would effectively be giving license to the legislature to overrule this court, raising separation of powers problems."[110]

Several later cases recited *Johnson*'s holding as denying retroactive effect to a "subsequent enactment [that] contravenes the construction placed on the original

_____

structure for the development of Washington common law"); *Union Bank N.A. v. Vanderhoek Assocs., LLC*, 365 P.3d 223, 229 (Wash. App. 2015) (favoring approach that would "allow the trial courts to independently evaluate the conflicting precedent and conclude how our Supreme Court would resolve the conflict").

[107]     557 P.2d 1299, 1301-02 (Wash. 1976).

[108]     *Id*. at 1302 (citing *In re Carson*, 530 P.2d 331, 333 (Wash. 1975)).

[109]     *Id.* at 1303.

[110]     *Id.*

statute *by this court*," i.e., the Washington Supreme Court.[111]   But in *State v. Dunaway*[112] the court made clear that decisions of the courts of appeal could be similarly authoritative.   At issue was a sentencing statute providing "that separate crimes encompassing 'the same criminal conduct' must be treated as one crime in determining criminal history" — "criminal history" being a significant factor in sentencing.[113]  A Washington court of appeals had held that whether arguably separate actions (for example, kidnapping and assault) constituted "the same criminal conduct" was determined under an "objective intent" test, and three other courts of appeals adopted this analysis; those three cases were combined for appeal in *Dunaway*.[114]

While the appeals were pending the legislature enacted a statutory definition of the term "same criminal conduct," but the Washington Supreme Court instead applied the court of appeals' "objective intent" test to the cases before it, declining to give the new law retroactive effect.[115]  The court explained that although "[a]n enactment supplying a definition for an ambiguous term contained in an earlier statute is merely a clarification, . . . *even a clarifying enactment cannot be applied retrospectively when it contravenes a construction placed on the original statute by the*

---

[111]     *Overton v. Wash. State Econ. Assistance Auth.*, 637 P.2d 652, 656 (Wash. 1981) (emphasis added); *see also Marine Power & Equip. Co. v. Wash. State Hum. Rts. Comm'n Hearing Tribunal*, 694 P.2d 697, 700 (Wash. App. 1985) ("The Legislature may not, under the guise of clarification, overrule by legislative enactment a prior authoritative Supreme Court opinion construing a statute.").

[112]     743 P.2d 1237 (Wash. 1987).

[113]     *Dunaway*, 743 P.2d at 1238 (quoting former Wash. Rev. Code. § 9.94A.400(1)(a)).

[114]     *Id.* at 1240-41 (citing *State v. Edwards*, 725 P.2d 442 (Wash. App. 1986), *overruled in part by Dunaway*, 743 P.2d at 1241).

[115]     *Id.* at 1241.

*judiciary.*"[116] "Any other result would make the legislature a court of last resort."[117] Therefore, because "[t]he Court of Appeals has already construed the [sentencing law's] 'same criminal conduct' language in a manner that is inconsistent in certain respects with the [new] statutory definition, . . . we will not apply [that] definition to the present cases."[118]

A later Washington court of appeals decision directly refuted an argument "that separation of powers principles are violated only if a legislative enactment contravenes the Supreme Court's, not the Court of Appeals', construction of the original statute."[119] At issue was a statute purporting to clarify that the Department of Corrections had always had the discretionary authority to impose a particular precondition on community placement; a court of appeals had earlier ruled in *In re Personal Restraint of Capello* that the precondition could be imposed only by the sentencing court.[120] The court of appeals in *Stewart* observed that the legislature was "in effect attempting to overrule *Capello* by expressly stating that the amendments are retroactive," but "[r]etroactive application of the amendments . . . would violate the constitutional separation of powers doctrine because the legislative branch of government cannot retroactively overrule a judicial decision which authoritatively construes statutory language."[121]

---

[116]  *Id.* at 1241 n.6 (emphasis added; citations omitted).

[117]  *Id.* (quoting 1A C. SANDS, STATUTORY CONSTRUCTION § 27.04 (4th ed. 1985)).

[118]  *Id.*

[119]  *In re Pers. Restraint of Stewart*, 75 P.3d 521, 529-30 (Wash. App. 2003).

[120]  *Id.* at 523-25 (citing *In re Pers. Restraint of Capello*, 24 P.3d 1074 (Wash. App. 2001), *cert. denied*, 37 P.3d 292 (Wash. 2001), *superseded by statute* 2002 Wash. Sess. Laws Ch. 50, Wash. Rev. Code § 9.94A.728(2) (2002), *as recognized in Stewart*, 75 P.3d at 529-33.

[121]  *Id.* at 529.

The court then explained why this rule applied to decisions of the courts of appeals. It cited the "uncontradicted authority . . . that it is emphatically the province of the judicial branch to say what the law is," noting that this "often-cited statement of the separation of powers principle . . . does not limit application of it to the Supreme Court, but rather refers to the judicial branch as a whole."[122] The court's analysis continued in a way that highlights the parallels to Collins's case:

> The [Washington] Supreme Court is, without question, the ultimate and final decision maker on the issue presented here. But, pursuant to the enabling legislation for the Court of Appeals, appeals from this court to the Supreme Court are solely within the Supreme Court's discretion to hear. The Supreme Court declined to review our decision in *Capello* and has not otherwise addressed the issue presented in that case. Accordingly, this court's opinion in *In re Capello* is the law that must be followed on the issue presented with respect to offenders sentenced before the [amendments at issue]. Separation of powers principles prevent the legislature from acting as a court of last resort and overruling *Capello* with respect to those offenders.[123]

Alaska's appellate process is the same in relevant respects. By statute, whether the supreme court hears a case on a petition for hearing from the court of appeals is

---

**122** *Id.* at 529-30 (quoting *Cockle v. Dep't of Lab. & Indus.*, 16 P.3d 583, 588 (Wash. 2001)).

**123** *Id.* at 530 (citations omitted); *see also Am. Disc. Corp. v. Shepherd*, 120 P.3d 96, 102 (Wash. App. 2005) ("Where the Supreme Court has not addressed an issue, an existing Court of Appeals decision is the law that must be followed on the issue." (citing *Stewart*, 75 P.3d at 530)). We note that the Washington Supreme Court later stated in a footnote that it "disagree[d] with the reasoning of the Court of Appeals" in *Stewart*, *Hale v. Wellpinit Sch. Dist. No. 49*, 198 P.3d 1021, 1028 n.6 (Wash. 2009), but the point of disagreement is not clear, and *Stewart* was not overruled. *See State v. Maples*, 286 P.3d 386, 389 (Wash. App. 2012) ("Notably, the *Hale* decision did not overrule *Stewart*, nor could it, as *Stewart* rested on the bedrock principle that the legislature cannot contravene an existing judicial construction of a statute.").

committed to the supreme court's discretion;[124] the court of appeals' decision remains binding on the trial courts unless the supreme court grants review and issues a superseding decision.[125] And although the legislature is free to disapprove of a case's outcome and clarify the law *prospectively* in reaction to it, it is not free to "act[] as a court of last resort" and overrule the court of appeals' statement of the law that governs the case before it.[126]

In accordance with these principles, the Washington Supreme Court has continued to emphasize the importance of respect between the branches, highlighting the legislature's authority to disapprove of court decisions and reject their reasoning even retroactively — but only as long as the legislature is "careful not to affect the rights of any parties to a prior judgment, reopen a case, or interfere with any judicial function."[127] Other courts echo this formulation of the law.[128] We conclude that

---

[124] AS 22.05.010(d) ("The supreme court may in its discretion review a final decision of the court of appeals on application of a party under AS 22.07.030.").

[125] AS 22.07.020(g).

[126] *Stewart*, 75 P.3d at 530.

[127] *In re Est. of Hambleton*, 335 P.3d 398, 406 (Wash. 2014); *see also Dot Foods, Inc. v. State, Dep't of Revenue*, 372 P.3d 747, 754-55 (Wash. 2016) ("We have recognized 'that a retroactive legislative amendment that rejects a judicial interpretation would give rise to separation of powers concerns' but have been willing to uphold such amendments where 'the legislature was careful not to reverse our decision.' " (quoting *Hale*, 198 P.3d at 1027-28)); *Lummi Indian Nation v. State*, 241 P.3d 1220, 1229 (Wash. 2010) ("The legislature made no attempt to apply the law to an existing set of facts, affect the rights of parties to the court's judgment, or interfere with any judicial function."); *Hale*, 198 P.3d at 1028 (recognizing law's retroactive effect did not violate separation of powers principles because "[t]he legislature was careful not to reverse our decision in *McClarty* nor did the legislature interfere with any judicial function").

[128] *See State v. Montes*, 245 P.3d 879, 881 (Ariz. 2011) ("[T]he Legislature does not violate separation of powers when it acts to make a law retroactive without disturbing vested rights, overruling a court decision, or precluding judicial decision-

because *Collins I* was authoritative and binding precedent when the legislature enacted the 2013 amendments to the sentencing laws, the amendments — if they are substantive rather than merely procedural — could not be applied retroactively to Collins himself without violating the ex post facto clauses of the federal and Alaska constitutions. We therefore reverse the court of appeals' decision in *Collins II*.

**C.    The Court Of Appeals Must Decide On Remand Whether The 2013 Amendments Are Substantive And Therefore Cannot Be Applied Retroactively To Collins.**

The State contends that the 2013 legislation, whether clarifying or not, may constitutionally be applied to Collins's case because it is merely procedural — "i.e., setting forth the *procedures* a defendant must follow to obtain a referral to the three-judge panel" — and "[t]he ex post facto clause does not bar retrospective application of procedural amendments."  (Emphasis in original.)  In support of this argument the State cites, among other cases, *Amin v. State*, in which the court of appeals considered whether an amendment to the sentence appeal statute, AS 12.55.120, violated the ex post facto clause.[129]  The amendment eliminated the right to appeal a sentence of imprisonment if the sentence "was imposed in accordance with a plea agreement . . . [that] provided for imposition of a specific sentence or a sentence equal to or less than a specified maximum sentence."[130]

In arguing that the more limited appeal rights could not constitutionally be applied to him retroactively, the defendant in *Amin* relied on the United States

---

making.");  *Gully v. State*, 658 N.W.2d 114, 119 (Iowa App. 2002) (holding that construing statutory amendment, "which established a meaning of that chapter directly contrary to the supreme court's previous interpretation of it . . . , as a mere clarification of the law would be effectively permitting the legislature to overrule a judgment of the supreme court").

[129]    939 P.2d 413, 414 (Alaska App. 1997).

[130]    *Id.* at 415 (alterations in original) (quoting AS 12.55.120(a)).

Supreme Court's statement in *Miller v. Florida* "that the ex post facto clause forbids application of any retrospective law that 'disadvantage[s] the offender affected by it.' "[131] But the court of appeals interpreted the clause more narrowly, pointing instead to the Supreme Court's more recent discussion of the clause's reach in *California Department of Corrections v. Morales*, in which the Court described its traditional test as "whether any [new law] alters the definition of criminal conduct or increases the penalty by which a crime is punishable."[132] The Court in *Morales* held that a California law allowing a state corrections board "to decrease the frequency of parole suitability hearings under certain circumstances" "create[d] only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes" and therefore could be applied retroactively without running afoul of the ex post facto clause.[133]

Applying this and other authority, the court of appeals concluded that because the changes to Alaska's sentence appeal statute neither altered the definition of crimes nor increased the punishment for those crimes, but rather only "altered the procedure by which appellate review [could] be obtained (requiring some defendants to file a petition for review rather than an appeal)," its retroactive application did not present an ex post facto problem.[134]

The court of appeals reiterated this analysis and conclusion five years later in *Stoneking v. State*.[135] The law in effect at the time of Stoneking's offense had allowed a sentencing court to "modify or reduce a sentence at any time during a term of

---

[131]   *Id.* (alteration in original) (quoting *Miller*, 482 U.S. 423, 430 (1987)).

[132]   *Id.* at 416 (alteration in original) (quoting *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 506-07 n.3 (1995)).

[133]   *Morales*, 514 U.S. at 501, 514.

[134]   *Amin*, 939 P.2d at 416-17.

[135]   39 P.3d 522, 523-24 (Alaska App. 2002).

imprisonment if it finds that conditions or circumstances have changed since the original sentencing hearing such that the purpose of the original sentence is not being fulfilled."[136] But a later amendment limited the defendant's time to apply for such a modification to "within 180 days of the original sentencing."[137] The court of appeals held that this amendment was procedural rather than substantive, reasoning that rather than creating, defining, or regulating rights, it merely "prescribe[d] the method of enforcing rights" by "designat[ing] the requisite time period within which to file an application [for sentence modification]."[138] And because the amendment was procedural, its retroactive application to Stoneking did not violate the ex post facto clause.[139]

We recognize that the 2013 legislative amendments at issue in this case — eliminating mitigators that after *Collins I* could have been used to support a referral to the three-judge sentencing panel, with the attendant possibility of reduced punishment — do not exactly parallel the procedural changes addressed in *Amin* and *Stoneking*.[140] The court of appeals did not consider this issue in the context of its

---

[136]     *Id.* at 523 (quoting former AS 12.55.088(a) (1978)).

[137]     *Id.* (quoting former AS 12.55.088(a) (1995)).

[138]     *Id.* at 524.

[139]     *Id.*

[140]     Some courts have held that applying new legislation that adds aggravators or eliminates mitigators may violate the ex post facto clause. *See United States v. Higgs*, 353 F.3d 281, 301 (4th Cir. 2003) ("[W]e agree that the government cannot solely rely upon 'multiple killings' as a statutory aggravating factor for a crime committed before its adoption without violating the Ex Post Facto Clause."); *State v. Correll*, 715 P.2d 721, 735 (Ariz. 1986) (holding that sentencing court's application of "new aggravating circumstance to murders which occurred before the effective date of this aggravating circumstance [amendment]" was barred by ex post facto clause); *cf. Staael v. State*, 697 P.2d 1050, 1052 (Alaska App. 1985) (noting trial judge's decision that mitigator recently repealed by legislature "could not be eliminated [from consideration on sentencing] ex post facto").

relevant precedent because of its determination that the 2013 legislation was clarifying and did not implicate the ex post facto clause for that reason. On remand the court of appeals should decide whether the substantive/procedural distinction described in its prior case law is determinative in Collins's case.

## V. CONCLUSION

We REVERSE *Collins II* and REMAND Collins's case to the court of appeals for further proceedings consistent with this opinion.